COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Chafin and Senior Judge Clements
Argued at Lexington, Virginia


SHANNON STROTHER

                                                        MEMORANDUM OPINION* BY
v.      Record No. 1229-17-3                      JUDGE JEAN HARRISON CLEMENTS
                                                              JULY 3, 2018
HARRISONBURG ROCKINGHAM
 SOCIAL SERVICES DISTRICT


                   FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                                  Clark A. Ritchie, Judge

           Shelly R. James (John Elledge & Associates, on brief), for appellant.

           (Rachel Errett Figura, Assistant County Attorney; James O. Clough,
           Guardian *ad litem* for the minor child, on brief), for appellee.
           Appellee and Guardian *ad litem* submitting on brief.


       Shannon Strother (father) appeals the order terminating his parental rights.  Father argues

that the circuit court erred in terminating his parental rights because Harrisonburg Rockingham

Social Services District (the Department) "did not prove by clear and convincing evidence the

elements required under Code § 16.1-283(C) for termination."  Upon reviewing the record and

briefs of the parties, we conclude that the circuit court did not err.  Accordingly, we affirm the

decision of the circuit court.

                                          BACKGROUND

       "On appeal, 'we view the evidence and all reasonable inferences in the light most

favorable to the prevailing party below, in this case the Department.'"  Farrell v. Warren Cty.

---

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Dep't of Soc. Servs., 59 Va. App. 375, 386, 719 S.E.2d 329, 334 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 18 (1991)).

On November 21, 2011, father was found guilty of three counts of carnal knowledge of a thirteen-year-old child, without force.[1] The circuit court sentenced him to a total of thirty years in prison, with twenty-seven years and six months suspended. The circuit court placed him on supervised probation for four years. The circuit court also ordered him to undergo Sex Offender Treatment and register with the Virginia State Police Sex Offender Registry.

Between January 2, 2014 and May 29, 2014, father was released to probation and completed Sex Offender Treatment. During this time period, he lived in a motel room that was paid for by his mother. His probation officer instructed him to apply for jobs, but father did not obtain employment. He made one payment of $40 toward his court costs and fines.

On May 29, 2014, father was arrested for possession of a Schedule I/II drug. In October 2014, the circuit court convicted him of possession of a Schedule I/II drug and sentenced him to a total of five years in jail, with four years and eleven months suspended. The circuit court placed him on supervised probation for two years. Also, in October 2014, as a result of the conviction for possession of drugs, the circuit court found that father had violated the conditions of his probation for the three counts of carnal knowledge. The circuit court revoked his suspended sentences and resuspended all but three months. The circuit court further recommitted father to supervised probation upon his release and ordered the continuation of the same terms and conditions of probation.

After being credited for time served, father was released to probation on October 6, 2014. Through his participation in the Gateway program, he found employment in November 2014. However, in March 2015, he was terminated from his job due to a wrist injury, and he did not find

---

[1] The circuit court entered the sentencing order on January 3, 2012.

another job. Father lived in a motel, and after he lost his job, his mother paid the rent. On August 1, 2015, the motel management placed a lock on his door, and he stopped living there. Father did not inform his probation officer that he had a change in address and did not tell her where he was living. His probation officer contacted him and asked him to meet with her, which he did on August 5, 2015. Father tested positive for methamphetamine and opiates and admitted that he had not updated his address with the Sex Offender Registry. On August 5, 2015, father was arrested for violating the terms of his probation.

On October 2, 2015, the circuit court found that father had violated the conditions of his probation for the three counts of carnal knowledge and the one count of possession of a Schedule I/II drug. The circuit court revoked his suspended sentences and resuspended all but three years. The circuit court extended his supervised probation for three years upon his release and applied the same terms and conditions as previously ordered. His anticipated release date was January 2018.

Father is the biological parent to a child born in December 2015 to Tina Campbell (mother). Mother was incarcerated at the time of the child's birth. Since there were no relatives available to take the child, the Department assumed custody of the child after her birth. The Department placed the child in the same foster home as two of her maternal half-siblings. On January 27, 2016, the Harrisonburg Rockingham Juvenile and Domestic Relations District Court (the JDR court) adjudicated the child as abused or neglected.

In January 2016, the Department met with father in the jail and asked him about possible relative placements for the child. Father provided the Department with his mother's contact information, but she indicated that she was unable to care for the child. In January 2017, April Wilson, father's half-sister, contacted the Department about possibly caring for the child; however, about a week later, Wilson informed the Department that "a major family issue" had arisen and she could not care for the child.

The Department encouraged father to participate in services, such as parenting classes and other developmental classes, while he was incarcerated. Father was on the waiting lists for several classes, but because of frequent moves in the prison system, he had had difficulty in securing a placement in the classes. At the time of the circuit court hearing, father had started a substance abuse class.

In August 2016, the Department sent father a letter with an update and photograph of the child. On March 9, 2017, the Department sent father a letter indicating that a new social worker had been assigned to the case and advising him to contact the social worker with any questions he had or names of possible relative placements. On April 24 and June 7, 2017, father called the new social worker. Father could not provide the Department with contact information for any other relatives who might be possible placements. While the child was in foster care, father did not write to the social workers to inquire about the case or the child.

In March 2017, the Department filed a petition to terminate father's parental rights. On April 26, 2017, the JDR court terminated father's parental rights pursuant to Code § 16.1-283(C)(2) and approved the foster care plan's goal of adoption. Father appealed to the circuit court.[2]

The parties appeared before the circuit court on June 15, 2017. The social workers testified that the child has been in the same home since she entered foster care and that it is a potential adoptive home. The child is "very happy" and "doing very well." The social workers described the child's interaction with her half-siblings and foster parents as "very loving." Father did not present any evidence. After hearing all of the evidence and argument, the circuit court took the matter under advisement.

---

[2] Father subsequently withdrew his appeal of the permanency plan.

On July 7, 2017, the circuit court issued its letter opinion. The circuit court found that termination of father's parental rights pursuant to Code § 16.1-283(C)(2) was in the child's best interests. On August 4, 2017, the circuit court entered the final order. This appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190, 717 S.E.2d 811, 814 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)). "When considering termination of parental rights, 'the paramount consideration of a trial court is the child's best interests.'" Id. (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

Father argues that the circuit court erred in terminating his parental rights because the Department did not prove, by clear and convincing evidence, that he failed to remedy the conditions that led to and continued the child's placement in foster care and that termination of his parental rights was in the best interests of the child. Father contends that the Department did not provide any services to him as Code § 16.1-283(C)(2) required. Code § 16.1-283(C)(2) authorizes a court to terminate a parent's parental rights if:

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and

appropriate efforts given the facts before the court." Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

Contrary to father's arguments, the Department was not required to offer him services while he was incarcerated. See Harrison v. Tazewell Cty. Dep't of Soc. Servs., 42 Va. App. 149, 163-64, 590 S.E.2d 575, 583 (2004). This Court has held that "[i]t would be patently unreasonable to require the Department, under such circumstances, to continue to offer services." Id. "[A]s long as he was incarcerated, the Department would have had no avenue available to offer [father] services aimed at assisting him in regaining custody of the child." Id. Nevertheless, the Department visited father in jail and provided him with updates and a photograph of the child. The Department sought father's input into possible relative placements and encouraged him to participate in services while he was incarcerated.

The circuit court acknowledged that the Department's "involvement in facilitating remedial services and assistance [was diminished] due to [father's] imprisonment." The circuit court emphasized that father's "incarceration is entirely self-inflicted, and it is worthy of note that the time that he is currently serving was originally suspended and he would not be serving it if he had not repeatedly violated his supervised probation." The circuit court further found that due to father's incarceration, he "certainly has not been able to develop and maintain a relationship with [the child], and he has not been able to participate in programs and assistance available to those who are not incarcerated." Considering the circumstances, the circuit court did not err in finding that the Department's efforts were "reasonable and appropriate."

> While long-term incarceration does not, per se, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the children will be served by termination.

Ferguson, 14 Va. App. at 340, 417 S.E.2d at 5.

At the time of the circuit court hearing, the child had been in foster care for approximately eighteen months. The evidence proved that the child was doing well and had a "loving" relationship with her half-siblings and foster parents. Father had never met the child and had been incarcerated for the child's entire life. His expected release date was January 2018, but there was no evidence that he had appropriate housing or employment upon his release. The circuit court explained, "If this matter would continue to [father's] release in January of 2018, [the child] would be facing years of foster care as [father] *began* the process of remedying his issues while at liberty at that time." The circuit court noted that father "has issues regarding substance abuse that he has been unwilling to remedy while at liberty and unable to remedy while incarcerated." The circuit court also found that father "is a violent sex offender and while he did complete the sex offender treatment program, he has not been at liberty long enough to establish that this treatment has been effective." Emphasizing that father "has been in jail, prison, or a motel room" since 2011, the circuit court concluded that "his life pattern leading up to his most recent incarceration was extremely unstable and entirely inconsistent with being an effective parent."

"The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." L.G. v. Amherst County Dep't of Soc. Servs., 41 Va. App. 51, 56, 581 S.E.2d 886, 889 (2003). "[I]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Harrison, 42 Va. App. at 162, 590 S.E.2d at 582 (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)).

Based on the record, the circuit court did not err in finding that it was in the best interests of the child to terminate father's parental rights.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

<u>Affirmed.</u>